# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

CEDRIC HARRINGTON, CHARLOTTE BRIGHAM, EDNA DIEUDONNE, SHERRY BENSON, SHIRLYN STARKS, GLENISHA DAVIS, JANELLA FLOWERS, and KASHANDA WEBB, )
)
)
)
)
)
)
)
NO.5:20-cv-00770-JKP-RBF
)

        Plaintiffs, )
)
    v. )
)
SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; and AT&T SERVICES, INC., )
)
)
)
)
)
    Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEE AWARD

Plaintiffs Cedric Harrington, Charlotte Brigham, Edna Dieudonne, Sherry Benson, Shirlyn Starks, Glenisha Davis, Janella Flowers, and Kashanda Webb, through their counsel, and in response to Defendants' motion for Attorneys' Fee Award, state as follows:

### SUMMARY OF ARGUMENT

Plaintiffs are simultaneously responding to the motion for attorneys' fees and appealing this Honorable Court's sanction order to the District Court.[1] Notwithstanding this quandary, Plaintiffs focus this brief on all the reasons that the Court's sanction under Rule 16(f)(1) and

---

[1] No argument, authority or inference in this response brief is meant to waive or otherwise override the argument, authority and inferences advanced in Plaintiffs' Contemporaneously filed Appeal to the District Court, doc. no.37. It is plaintiffs' position that the sanction order was inappropriate under the circumstances and in light of the Advisory filed with the Court, however, the Plaintiffs in this brief are responding to the petition for attorneys' fees filed pursuant to this Honorable Court's Order of December 2, 2020, doc. no. 27.

Rule 37(b)(2)(A)(iii) should result in an award of no zero attorneys' fees, or in the alternative, a modest award of attorneys' fees that fit the crime of logging into the teleconference hearing eighteen minutes late and three minutes after the hearing ended, particularly on a record that is devoid of any evidence of bad faith, pattern of abuse of the judicial process or contumacious conduct. Separately, Plaintiffs attack various aspects of Defense counsel's petition for $24,120 plus an additional undefined amount of fees for additional sanctions that have not been awarded or invited by the Court.

Plaintiffs reasonably infer that the sea change from this Honorable Court's benign ruling in the December 2, 2020 hearing transcript to the punitive sanctions and invitation to petition for fees in the later order dated the same day (doc no. 27) relates to this Honorable Court's reliance on the truth and completeness of defense counsel's characterization of Judge Starr's ruling in the Salvatierra matter, dismissing a similar count for breach of contract. Regrettably, Plaintiffs' counsel's absence at the hearing facilitated the omission of the most salient distinguishing fact between the September 24, 2020 ruling in the *Salvatierra* matter dismissing the CBA contractual claims and this matter, namely that Cedric Harrington timely brought his grievance for the daily overtime claims on the last day of his employment with the company, July 10, 2020. Olivia Salvatierra and Jordan Enriquez never filed grievances. At the time the breach of contract claims were challenged in the Salvatierra matter, on November 27, 2019, and then fully briefed, by January 8, 2020, Mr. Harrington's individual and class-wide grievance hadn't even been filed and wouldn't be filed with AT&T for six more months.

Of course the Salvatierra plaintiffs had not exhausted their contractual remedies, they had never sought them in the first place! Plaintiff's argument before Judge Starr was that plaintiffs Salvatierra and Enriquez weren't required to follow the grievance procedure contained in the

CBA because it wasn't mandatory, but when the Court disagreed with that position, plaintiffs asked to stay the litigation so that they both could file grievances. The Court denied that request and dismissed the breach of contract claims. Plaintiffs cured that deficiency with Mr. Harrington's timely grievance, which by all measures the union has refused to process, has been repudiated by AT&T, and which would be futile anyway. Not only did Mr. Harrington exhaust his contractual remedies, he also satisfied all three exceptions to the exhaustion requirement. None of this was reported to the Court by Ms. O'Donnell at the hearing.

Now Mr. Harrington stands on the precipice of the six month statute of limitations to file his Section 301 claims with this Honorable Court, the deadline being January 9, 2021 (another fact the Defendants neglected to mention to this Honorable Court) and the Court was improperly led into skewed conclusions as to the merit and sufficiency of those claims. If AT&T's counsel had been officers of the Court first, and advocates for AT&T second, this would have never happened. In this way, they share the blame with Plaintiffs' counsel for the situation the litigants and the Court now find themselves in.

**STANDARD**

The authority to impose sanctions for failure to attend a hearing, in contravention of a District Court's order to appear, pursuant to Rule 16(f)(1) and Rule 37(b)(2)(A)(iii), "flows from the court's inherent power to control its docket and prevent undue delays in the disposition of pending cases." *Boudwin v. Graystone Insurance Co.,* 756 F.2d 399, 401 (5th Cir. 1985), citing *Link v. Wabash Railroad Co.,* 370 U.S. 626 (1962). Because of their very potency, the Court's inherent powers "are not a broad reservoir of power, ready for an imperial hand, but a limited source, an implied power squeezed from the need to make the court function," therefore they must be exercised with restraint and discretion. See *Chambers v. NASCO, Inc.,* 501 U.S.

32, 44-45, *citing Roadway Express Inc. v. Piper,* 447 U.S. 752, 764 (1980); *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998). A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Id.* To impose sanctions under the Court's inherent powers, "a court must make a specific finding that the [party] acted in 'bad faith'" or in willful abuse of the judicial process. *Crowe, supra,* 151 F.3d at 236; see also *In re Moore*, 739 F.3d 724, 729-730 (5th Cir. 2014).

Outright dismissal of a lawsuit is a particularly severe sanction, yet is within the court's discretion. *Roadway Express, supra*, 447 U.S., at 764-765. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Id.*; See also *Hutto v. Finney,* 437 U.S. 678, 689, n. 14 (1978). Indeed, "[t]here are ample grounds for recognizing ... that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," *Roadway Express, supra,* 447 U.S., at 765, even though the so-called "American Rule" prohibits fee shifting in most cases. See *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 (1975). Like the dismissal sanction, the assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 516 (5th Cir. 1985) citing *Roadway Express, supra.,* 447 U.S. at 763–64.

The exceptions to the American Rule outlined in the *Alyeska* decision fall into three categories. The first, known as the "common fund exception," derives not from a court's power to control litigants, but from its historic equity jurisdiction, see *Sprague v. Ticonic National Bank,* 307 U.S. 161, 164 (1939), and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others. *Alyeska, supra*, 421 U.S., at 257–258. Second, a court

may assess attorney's fees as a sanction for the " 'willful disobedience of a court order.' " *Id.,* at 258, quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718 (1967). Third, a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska, supra,* 421 U.S., at 258–259 (internal quotations omitted). In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946) as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," *Hutto, supra,* at 437 U.S., at 689, n. 14. Absent this express finding, the award of fees in this matter cannot fairly be characterized under the prevailing party doctrine as there has been no material alteration of the legal relationship between the parties as a result of the Court striking Plaintiffs' motion for leave to file the amended complaint. See *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) citing *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792-793 (1989).

I. **This Honorable Court's findings and sanction ruling during the December 2, 2020 hearing is incongruent with the subsequent findings and sanction ruling in this Honorable Court's December 2, 2020 Order (doc. no. 27). The punishment of inviting an award of attorneys' fees associated with attending the hearing and the preparation of the response to the motion to amend does not fit the crime of inadvertently failing to docket the hearing and then logging into the hearing nine minutes after the hearing was initiated, and three minutes after it concluded, warranting a reduction of any requested attorneys' fees to zero, or in the alternative, to a reasonable amount of hours associated with the preparation for and attendance at the December 2, 2020 hearing.**

Plaintiffs' counsel want to clearly and unequivocally state, for the record, that it was our fault that we failed to properly docket the December 2, 2020 hearing scheduled by the Court and are

not advancing any excuse, associated with opposing counsel,[2] the Court or anything else, for our neglect in failing to timely appear at the hearing. Plaintiffs' counsel also clearly and unequivocally state that they apologize to the Court and opposing counsel for consuming the Court's and opposing counsel's time and resources associated with our failure to appear at the December 2, 2020 hearing. Plaintiffs' counsel also appreciate the courtesy the Court extended to counsel in contacting us to advise us of our blunder.

The Court's staff directed Plaintiffs' counsel to file an advisory to explain why the hearing was missed, when multiple representatives from each office received the ECF notice setting the hearing at 11:00 am on December 2, 2020. Plaintiffs' counsel did so by filing the advisory, signed by counsel Glen J. Dunn, Jr. and supported by the affidavit of one of Mr. Dunn's staff, Pongpak Deepipat. In the advisory, Plaintiffs chronicle their communications and actions the morning of the December 2, 2020 hearing.

Plaintiffs submit that while their actions were inconsiderate of the Court's and opposing counsel's time and negligent in their docketing the hearing, no record of bad faith, abuse of the judicial process or contumacious conduct exists nor occurred. Moreover, no pattern of dilatory conduct towards the Court on behalf of plaintiffs exists. In fact, Plaintiffs' counsel have corrected the internal weakness in their own docketing and docket sharing procedures in this matter, as well as it relates to all AT&T matters before this Honorable Court to ensure that this blunder is not repeated in the future.

---

[2] Defense counsel, in their response to Plaintiffs' advisory, suggest "To the extent this paragraph is intended to imply that counsel for Defendants in this case had a telephone conference with Mr. Dunn and Mr. Brown on December 2, 2020, the statement is inaccurate." Doc. no. 30, pg. 2, para. 2. It is not intended to imply anything other than the fact, which AT&T does not contest, that we had a call with its counsel regarding global settlement of this and all other related matters and were finishing our joint call at that point in the morning. We were not on vacation, asleep or otherwise in an abusive or bad faith posture towards this Honorable Court, opposing counsel or the opposing party. AT&T is the party that has directed Hayes & Boone to seek $24,120 in fees for the missed hearing, the full award of which would provide AT&T with substantial leverage over Plaintiffs in those negotiations.

Specifically, the docketing staff at all three firms will now confer and share their entries and confirm the attending counsel, while also positively confirming with the attending attorney to confirm their awareness of the hearing.  On this record, Plaintiffs respectively submit that the sanction of striking the motion, subjecting Plaintiffs future request to amend to the heightened Rule 16 "good cause standard, and warning, by way of Court order, of more severe sanctions should Plaintiffs fail to appear for any future hearings before this Honorable Court, is an appropriate sanction for the actions of Plaintiffs' counsel at issue.  In fact, this the course of action that this Honorable Court stated it would follow at the December 2, 2020 hearing: "But what I'm going to do is I'm just going to strike the motion, as a sanction for the failure of plaintiffs' counsel to appear at this hearing.  What that means is that the plaintiffs will now be beyond the scheduling order deadlines.  And if they do seek to amend, they'll need to explain how they satisfied the more stringent good cause standard under Rule 16."  Dec. 2, 2020 Transcript, pg. 4, ln 25 – pg. 5, ln. 5 attached as Exhibit A.

In the order dated the same day, the Court departs from its ruling in the hearing transcript and more sanctions are awarded.  The Court strikes the motion to amend, but then discusses the merits of the motion that was stricken, making findings relating to plaintiffs' failure to plead exhaustion of remedies and futility without referencing the specific allegations of the proposed complaint or referencing the specific language or findings of the order dismissing the breach of contract claims in the *Salvatierra* matter.  If the motion was stricken, it seems that the merits of the motion should not have been properly before the Court.  If further punitive sanctions were contemplated by this Honorable Court that relate to the merits of the stricken motion, plaintiffs submit that they should have been afforded some due process before those additional issues were foreclosed.

The Court also invites Defense counsel to file a motion for attorney's fees in connection with responding to the stricken motion and attending the hearing, without expressly granting the sanction of attorneys' fees for either activity or making a specific findings of bad faith, abuse of the judicial process or contumacious conduct on behalf of Plaintiffs' counsel. The Defendants received the relief they asked for in their response brief, namely the motion was stricken and denied, but now through their motion seek to make Plaintiffs' pay for it. Prevailing defendants cannot be awarded fees as the losing plaintiff is not a violator of federal law, particularly in cases involving remedial claims such as Title VII relief. See *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989).

Moreover, this Honorable Court expresses frustration in the sanction Order that "…plaintiffs don't explain why they request an extension of the page limit or time limit so they could timely brief the issue in their reply." Doc no. 27. Plaintiffs did make such a request: "Should the Court disagree with Plaintiffs' understanding of the scheduling order and deadline to amend as explained above, Plaintiffs request the Court provide an additional seven days to reply and extend the page limit for their reply to at least 10 pages." Doc. no. 24, FN 5. Plaintiffs intend to seek amendment of the complaint to include Mr. Harrington's section 301 claims arising from his timely filed individual and class-wide grievance. All of the arguments advanced by Defendants in their Response to the Motion for Leave to Amend will apparently be necessary to respond to the merits of that motion, we assume, therefore an award of attorneys' fees associated with the preparation of the response brief would be inappropriate because that motion has not been precluded as part of the sanction order, and advisory sanction orders are disfavored.

In other words, no attorneys' fees are appropriate for the defense counsel's efforts in responding to the motion to amend because the Plaintiffs still have the right to seek amendment

for the breach of contract claims, to which those arguments remain the same and where the Court found nothing sanctionable in the motion itself, to which the response was directed.

When the Court exercises its inherent powers, as in all cases, the punishment must fit the crime. *Dietrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999) citing *Chambers, supra.*, 501 U.S. at 44-45. Submitting plaintiffs' counsel, representing AT&T employees asserting modest unpaid wage claims under a remedial statute like the FLSA against their employer, AT&T., under a contingency agreement, to $24,120 in attorneys' fees[3] for inadvertently failing to docket a telephonic hearing, and then obeying the Court's directive to call-in, albeit nine minutes after that directive, and then filing an advisory as directed by the Court, for a six minute hearing on a five paragraph motion does not fit the crime. Awarding any attorneys' fees whatsoever where the Court has made no express finding of a pattern or history of dilatory conduct, bad faith, or contumacious conduct does not fit the crime.

Awarding attorneys' fees for the drafting of a response brief when Defendants were awarded the relief it sought and Plaintiffs are not precluded from refiling their motion to amend, where those arguments will apply when the motion is refiled, does not fit the crime. Indeed, levying such heavy-handed and substantial monetary sanctions against attorneys stepping into the shoes of the government to serve the legislative intent of the FLSA by representing and protecting the workers of the United States, particularly in these unprecedented times with the pandemic already landing significant economic blows to all workers, including plaintiffs' counsel, who are representing plaintiffs on a contingency basis, could have a chilling effect on the legitimate zeal of other attorneys who would otherwise seek to represent similarly wronged

---

[3] See *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 516 (5th Cir. 1985)(Plaintiff repeatedly and flagrantly disobeyed discovery orders, refused to produce documents and appear for depositions and impaired Defendant's ability to prepare for trial, but dismissal was vacated and award of $30,000 in attorneys' fees vacated and remanded for abuse of discretion where District Court failed to articulate reasons why it didn't impose less severe less severe sanctions)

workers.  Such a precedent could work in favor of and embolden powerful and deep pocketed

employers, like AT&T, to disregard the covenants and obligations of the labor and wage laws.

> **II.**  **Assuming Arguendo that this Honorable Court will award some monetary attorneys' fees to Defendants and their counsel, the request for fees is unreasonable and should be reduced to cover only the time causally connected to the sanctioned conduct, namely the missed hearing.  This should include only the time spent attending the hearing that Plaintiffs' counsel failed to attend and a reasonable time preparing for a hearing on a five paragraph motion for leave to amend, which plaintiffs submit should total no more than 1.5 hrs of attorney time for Ms. O'Donnell.**

Determinations of hours and rates are questions of fact.  See *Bode v. United States,* 919 F.2d

1044, 1047 (5th Cir.1990) (reviewing hours for clear error).  District court determinations of

reasonable hours and reasonable rates are reviewed for clear error. See *Blanchard v.*

*Bergeron,* 893 F.2d 87, 89 (5th Cir.1990) (reviewing underlying factual determinations for clear

error).  Lodestar adjustments are reviewed for abuse of discretion.  See *Palmco Corp. v.*

*American Airlines, Inc.,* 983 F.2d 681, 688 (5th Cir.1993) (reviewing award of attorneys' fees for

abuse of discretion). "It remains important, however, for the district court to provide a concise

but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S.424.

437; see also *Brantley v. M.F. Surles,* 804 F.2d 321, 325–26 (5th Cir. 1986) ("Our concern is not

that a complete litany be given, but that findings be complete enough to assume a review which

can determine whether the court has used proper factual criteria in exercising its discretion to fix

just compensation."); *Nisby v. Commissioners Court,* 798 F.2d 134, 137 (5th Cir.1986) ("When

the district court does not explain its reasons for the attorney's fee it awards, we are unable

adequately to review the propriety of the fee award."); see also *Louisiana Power & Light Co. v.*

*Kellstrom,* 50 F.3d 319, 329 (5th Cir. 1995)

Assuming arguendo that the Court will award attorneys' fees for Plaintiffs' failure to appear

at the hearing, and further finds that the record established by the Advisory filed by the Plaintiffs

with the Court amounts to bad faith, abuse of the judicial process, or contumacious conduct, plaintiffs respectfully submit that reasonable fees associated with the preparation for, and attendance at, the six minute hearing would be 1.5 hours of attorney time for counsel Laura O'Donnell. At her rate of $555.00 a hour, that amounts to fees of $832.50. This is based on the billing entry of 0.5 hours for attendance at the hearing, and one hour of preparation time for the hearing. Plaintiffs' do not object to Ms. O'Donnell's rate and find that her experience, credentials and rate are similar to the education, credentials, experience and reasonable rates for plaintiffs' counsel, Mr. Braziel, Mr. Brown and Mr. Dunn.

Ms. O'Donnell's billing records for preparation for the December 2, 2020 hearing reveal an unreasonable request for fees associated with this same activity. She summarizes 6.8 hours of preparation for the hearing on plaintiffs' 1.75 page (5 paragraph) motion, Defendants' 12 page response brief, and Plaintiffs' 3 page reply. That's 30 minutes of preparation per page of briefing. Plaintiffs submit that this amount is unreasonable, particularly for an attorney of Ms. O'Donnell's sophistication and experience in these types of matters and the complexity of the issues presented by the motion for leave.

An additional basis to reduce and eliminate the fees sought by Ms. O'Donnell are where she engages in impermissible block billing in her submitted summary, including the 4.9 hours submitted for November 4, 2020, 5.5 hours on November 5, 2020, 4.0 hours on December 1, 2020 and 2.4 hours on December 3, 2020. These entries are large hourly blocks and the vague summary does not allow this Honorable court or Plaintiffs' counsel to reasonably understand what exactly was done during these block times or how much time was devoted to the activities vaguely described in the block entry. The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review. *See Leroy v. City*

*of Houston (Leroy II),* 906 F.2d 1068, 1080 (5th Cir.1990) (striking hours as "not illuminating as to the subject matter" or "vague as to precisely what was done"); *Leroy I,* 831 F.2d at 585–86 (reversing when district court accepted all hours from records that were "scanty," completely missing, or lacking in explanatory detail); *see also H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991) (reducing hours for vague entries such as "legal research," "trial preparation," and "met with client"). See also *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 326 (5th Cir. 1995). The same deficiencies are noted in the billing summary of Ms. Ahmadi on 11/1/20; 11/2/20; 11/3/20; 11/4/20 and 11/5/20, as well as Ms. Ingram's sole billing summary of 12/1/20. Additionally, Ms. O'Donnell also bills for vague communications with in-house lawyers at AT&T, labelled "client comments" on November 5, 2020 or "communicate with client" on November 14, 2020. Ms. O'Donnell bills 0.5 hours for attendance at the hearing, which Plaintiffs believe is a reasonable amount of time for that activity.

The remaining $9,967.50 of billing summary should be cut from the request for fees because is constitutes activities duplicative of those performed by Ms. O'Donnell – namely legal research, review of case-law, and drafting the response brief. Therefore the activities of Paloma Ahmadi and Jennifer Ingram are not properly supported and should not be awarded. See *Rouse v. Target Corporation*, 181 F.Supp.3d 379, 389-390 (S.D. Tex. 2016).

The party seeking the fee award has the burden of establishing the reasonableness of the number of hours billed. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). One relevant consideration in determining reasonableness is whether the attorney hours show an exercise of "billing judgment." *Id.*; *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir.2013). To establish the exercise of billing judgment, a fee applicant must produce "documentation of the hours charged and the hours written off as unproductive, excessive, or redundant." *Rouse v.*

*Target Corp.,* 181 F. Supp. 3d 379, 384 (S.D. Tex. 2016) quoting *Saizan*, 448 F.3d at 799. "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.* In other words, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Rouse v. Target Corp.,* 181 F. Supp. 3d 379, 388 (S.D. Tex. 2016) quoting *Villegas v. Regions Bank*, 2013 WL 76719, at *4 (S.D.Tex. Jan. 4, 2013) (J. Rosenthal).

Here, the Defendants did not demonstrate any evidence of billing judgment. Moreover, Defendants seek fees for unrelated and unrecoverable tasks such as outlining and reviewing case-law relating to "possible unknown arguments" and "if Plaintiffs assert new arguments at hearing that were not raised in briefing." Just these two entries relate to 6 hours of additional billing. This was in response to a 1.75 page, five paragraph motion for leave to file an amended complaint. There is no reasonable argument to support recovery of fees for possible unknown arguments and arguments not raised in the briefing, particularly where no argument was heard and the five paragraph motion was stricken. Given the absolute lack of billing judgment demonstrated by defense counsel her billing summary, plaintiffs suggest reducing the fee request by 50%.

In the end, defense counsel seeks to recover 46.9 hours of attorney work for responding to a 1.75 page, five paragraph, motion for leave to amend. Plaintiffs respectfully submit that the amount of work is not congruent with the task at hand, and the total of $24,120.00 in attorneys' fees is incongruent with the conduct the Court predicated its sanction order on – plaintiffs' counsel being 18 mins late for a telephonic hearing.

**III.** **Defense counsel misled the Court as to the issues before Hon. Judge Brantley Starr in the *Salvatierra* matter, his ruling on AT&T's motion to dismiss a count for breach of contract claims under the CBA and how it compared to the procedural posture in this matter.**

Plaintiffs failed to appear at the hearing, so we will not try to turn back the clock in order to get back our opportunity to argue this point. Instead, we will let the Defendants own words in their filings, and the Court's Memorandum order granting the partial motion to dismiss in the *Salvatierra* matter, case no. 19-cv-2624-X, Northern District of Texas, Dallas Division, speak for us. These are the words defense counsel should have used, as officers of the Court, at the December 2, 2020 hearing:

In the Memorandum in support of its Partial Motion to Dismiss, AT&T states:

"Plaintiffs' claim expressly asserts an alleged breach of the CBA governing their employment with Defendants, but Plaintiffs do not allege that they have exhausted—or even initiated—the grievance procedures mandated by that CBA prior to filing their Complaint. Nor do Plaintiffs allege that any exception to the exhaustion requirement applies." (Doc. no. 7, pg. 2)

"Plaintiffs do not allege—as required to state a claim under Section 301—that they have exhausted (or even attempted) the contractual remedies provided by the CBA." (Doc. no. 7, pg. 6)

In its Reply in support of its Partial Motion to Dismiss, AT&T states:

"Plaintiffs further admit that they never pursued—much less exhausted—the grievance and arbitration procedures mandated under that agreement before bringing their breach of contact claim. But Plaintiffs argue that their claim is nevertheless viable based on the contention that the CBA's grievance and arbitration provisions are non-exclusive and merely one of "a buffet of remedies to choose from." Resp. at 2, 5–6. ( Doc. no. 15, pg. 1)

"Finally, granting leave to replead or a stay of litigation would be futile here, as Plaintiffs admittedly have not exhausted the provided-for grievance procedures nor do they suggest that they could still do so within the time allotted for such claims under the CBA." Doc. no. 15, pg. 1-2

"Because Plaintiffs cannot suggest that they exhausted the grievance and arbitration procedures established under the CBA or that the Union failed to represent them fairly, they instead argue that the Court should interpret the CBA to find that the contracted-for grievance procedures are not an "exclusive remedy." (Doc. no. 15, pg. 4-5)

In his Memorandum opinion and Order granting AT&T's Partial Motion to Dismiss, Hon. Judge Brantley Starr states:

> "As a threshold matter, the Court treats this breach of contract claim as a claim under Section 301 of the Labor Management Relations Act of 1947.9 Defendants argue that plaintiffs must first exhaust the grievance and arbitration procedures in the collective bargaining agreement before bringing a Section 301 claim. Because plaintiffs have not attempted to exhaust these procedures, defendants contend that this Court lacks subject matter jurisdiction. The Court agrees." (Doc. no. 20, pg. 3)

> "The plaintiffs do not allege that they exhausted the procedures for redress provided in the Agreement or that one of the exhaustion-requirement exceptions applies. Instead, they argue that the procedures for redress in the Agreement are not final and exclusive. For the reasons set out below, the Court finds that the Agreement is final and exclusive. The Agreement therefore requires the plaintiffs to exhaust its procedures for redress before commencing this suit." (Doc. no. 20, pg. 5)

Cedric Harrington served his individual and class-wide grievance on July 10, 2020 upon his manager Hazelton Kischchen, as well as the Director and Associate Director of Labor Relations at 7:40 pm CST. July 10 was the last day of his employment with AT&T before his retirement from the San Antonio Revenue management call center. Neither the union nor AT&T have taken any action in furtherance of this grievance, and when we as counsel tried to inquire as to the status of the grievance, AT&T threatened us with improperly contacting representatives of a represented party in litigation. The reason that Ms. O'Donnell overzealously compared *Salvatierra* to *Harrington* is because she and AT&T know we cured the deficiency and can proceed with the claims. We look forward to discussing these issues further when we re-file the motion for leave to amend.

WHEREFORE, Plaintiffs pray for the entry of an Order denying Defendants motion for attorneys' fee award, or in the alternative, granting the motion and awarding zero dollars, or in the alternative, awarding Defendants 1.5 hours of attorney time for Ms. O'Donnell in connection with the 12.2.20 hearing, and for such other or further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ Glen J. Dunn, Jr.*
   GLEN J. DUNN, JR.

**GLEN J. DUNN, JR.**
Illinois Bar No. 6274852
GDunn@GJDlaw.com
Glen J. Dunn & Associates, Ltd.
121 West Wacker Drive, Suite 1414
Chicago, IL 60601
Tel: 312.546.5056
Fax: 312.546.5058

**JEFFREY GRANT BROWN**
Illinois Bar No. 6194262
jeff@JGBrownlaw.com
Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd., Suite 107
Chicago, IL 60604
Tel:     312.789.9700
Fax:     312.789.9702

**J. DEREK BRAZIEL**
Texas Bar No. 00793380
jdbraziel@l-b-law.com
**TRAVIS GASPER**
Texas Bar No. 24096881
gasper@l-b-law.com

**BRAZIEL DIXON, LLP**
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 16, 2020, I served the foregoing Motion for Leave to File an Amended Complaint upon all parties and/or counsel of record, through the Court's CM/ECF system which will send a notice of electronic filing to counsel of record who have filed an appearance within this case.

*/s/ Glen J. Dunn, Jr.*
Glen J. Dunn, Jr.